# IN THE COURT OF APPEALS OF IOWA

No. 23-0431
Filed April 10, 2024

**MICHAEL DUANE SMITH,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Scott County, Stuart P. Werling,

Judge.

An applicant appeals the denial of his request for postconviction relief.

**AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold,

Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

Considered by Tabor, P.J., and Badding and Buller, JJ.

**TABOR, Presiding Judge.**

Michael Smith contends his plea counsel provided ineffective assistance in two ways. First, he claims that counsel ignored his directive to withdraw the guilty pleas unless the sentencing court agreed to run all his sentences concurrently. Second, he argues that no factual basis existed for his plea to interference with official acts while displaying a dangerous weapon. Those claims did not convince the district court, which denied Smith's application for postconviction relief. Nor do they convince us on appeal. So we affirm the denial of relief.

## I.      Facts and Prior Proceedings

Bettendorf police officer Patrick Mesick noticed a dark tint on the driver's side window of the pickup truck that Smith was driving in February 2021. The officer also knew that Smith had violated his parole, leading to an outstanding warrant for his arrest. Mesick turned on his lights and sirens. But rather than stop, Smith sped away. Mesick and other officers driving marked patrol cars pursued Smith. The officers deployed stop sticks, puncturing one of Smith's tires. Then Mesick parked his patrol car in the path of the pickup. Other officers used their cruisers to box in Smith's truck.[1]

In reaction, Smith revved his engine and started ramming the patrol vehicles. Mesick drew his gun, before retreating to a safer spot behind his car. Another officer tried to break the driver's side window. When Smith partially rolled down his window, Sergeant Andrew Champion directed fellow officers to use pepper spray to subdue him. Champion recalled: "Smith was not complying with

---

[1] The postconviction record included video recordings of this standoff from the officers' squad cars and body cameras.

verbal orders and clearly had no regard for anyone's safety." All told, six police cruisers incurred bumper damage.

For that February 2021 standoff, the State charged Smith with first-degree criminal mischief (a class "C" felony in violation of Iowa Code section 716.3(1)(a) (2021)), interference with official acts while displaying a dangerous weapon (a class "D" felony in violation of section 719.1(1)(f)), and eluding (a serious misdemeanor in violation of section 321.279(1)(a)). The State also charged Smith with eluding and criminal mischief for a separate January 2021 incident. Smith reached a deal with the State—pleading guilty to the interference charge, as well as third-degree criminal mischief, an aggravated misdemeanor, and eluding. In turn, the State dismissed the remaining counts and did not seek the habitual offender enhancement.

In his written guilty plea, Smith admitted knowing that police were trying to arrest him on an outstanding warrant. He also admitted that, in resisting arrest, he drove his vehicle "irresponsibly and knowing with reasonable probability that it can cause someone a serious injury." The court imposed concurrent indeterminate terms of five years on the interference count, two years on the criminal mischief count, and one year on the eluding count. The court ran those sentences concurrent to another pending case, but consecutive to his parole violation.

Smith did not file a direct appeal. But he did apply for postconviction relief in October 2021. With counsel's help, Smith filed amended applications in January and February 2022. In those applications, Smith alleged plea counsel was ineffective for (1) filing the guilty pleas against his wishes and (2) allowing him to plead guilty without a factual basis for the interference and criminal mischief

offenses.  After a postconviction hearing, the court denied relief on the interference and eluding convictions.[2]  Smith appeals.

## II.        Scope and Standards of Review

In general, we review the denial of an application for postconviction relief for legal error.  *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021).  But Smith's application raises the constitutional claim of ineffective assistance of counsel, so we review this record de novo.  *See id.*  That standard means that we are not bound by the district court's determination, but we value its fact findings, especially on witness credibility.  *Id.*

## III.       Analysis

To prove he did not receive effective representation, Smith must show that his plea counsel, Grishma Arumugam, failed to perform an essential function and prejudice resulted.  *See id.*  That failure occurs when counsel makes such serious mistakes that she stops being the kind of advocate ensured by the Sixth Amendment.  *See id.*  We presume that plea counsel acted competently.  *Id.*  But Smith can overcome that presumption by showing that attorney Arumugam's "performance fell below the normal range of competency."  *Id.* (quoting *Krogmann v. State*, 914 N.W.2d 293, 306 (Iowa 2018)).  To satisfy the prejudice requirement, Smith must show it was reasonably probable that, but for counsel's errors, he "would not have pleaded guilty and would have insisted on going to trial."  *Id.* at 523 (quoting *Doss v. State*, 961 N.W.2d 701, 709 (Iowa 2021)).

---

[2] The court granted relief on the criminal-mischief conviction, finding no factual basis that Smith intentionally destroyed a parole GPS tracking unit.

**A. Smith's Desire for Concurrent Sentences**

Smith first alleges that Arumugam was ineffective because the guilty pleas that she filed did not track his wishes, so they were involuntary. To make that point, Smith testified at his postconviction hearing that he told counsel that all he wanted was concurrent sentences: "Otherwise, I'm not pleading guilty to the stuff I didn't actually do." He asserted that he wrote on the back of the plea agreement: "I'll take this plea as long as it's concurrent with what I got right now, the parole revocation. If not, I want to go to trial." Arumugam denied Smith's assertion: "No, I did not receive anything written on the back." She recounted her conversation with Smith about the plea agreement:

> So when we signed the plea agreement, he asked, are the sentences running concurrent with the current cases going on which was negotiated as part of the plea agreement? He did not mention about his parole sentence to run concurrent at that point. But we did have that conversation after he signed the plea agreement when I called him back. And at that point, we did discuss that. And I explained to him that it is up to judge's discretion, that's not part of the plea agreement. And I asked him if he is in agreement for me to proceed, and we can ask that from the Judge, but it's not something promised. There are always ifs and buts, which we said the judge can decide, and the State can oppose. We do not know anything. And he still wanted me to proceed with the plea as it was.

Faced with these competing versions, the postconviction court placed its stock in counsel's recollection. "The court believes that no such handwriting existed." The court also rejected Smith's testimony that "at the Zoom sentencing hearing, when the consecutive sentencing was announced, he tried to withdraw his plea but his microphone was muted and the hearing ended without him being able to raise objection." The court found that Smith kept "secret" his desire not to receive consecutive sentences. And when presented with the plea agreement, the

sentencing court had discretion to run the new five-year term consecutive to the parole revocation, according to the postconviction ruling.

We decline Smith's invitation to disturb the postconviction court's factual findings. Instead, we give weight to that court's credibility determinations. *See Taylor v. State*, 352 N.W.2d 683, 687 (Iowa 1984). Plus, those determinations are supported by the transcript of the sentencing hearing. Smith had a chance to voice any disagreement with the consecutive sentencing but did not do so.

### B. Factual Basis for Interference using a Dangerous Weapon

Smith next contends counsel was remiss in letting him plead guilty to interference with official acts using a dangerous weapon when no factual basis existed for that offense.[3] He focuses on the final element, asserting he did not use his truck as a weapon. To advance his position at the postconviction hearing, Smith testified that "no matter what camera or angle you watch . . . I tried to avoid them hitting—it was a brand-new truck. I didn't want to wreck it. I was trying to get home. That's all."

Like the postconviction court, we start with the statutory definition of dangerous weapon, which includes "any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being." Iowa Code § 702.7. A vehicle, if used with the requisite intent, may be a dangerous weapon. *State v.*

---

[3] Under Iowa Code section 719.1(1)(f), interference with official acts is a "D" felony and occurs "[i]f a person commits interference with official acts . . . and in doing so inflicts or attempts to inflict serious injury, or displays a dangerous weapon."

*Oldfather*, 306 N.W.2d 760, 763–64 (Iowa 1981). And the record supports the postconviction court's conclusion that Smith used his truck in a manner revealing his intent to inflict death or serious injury.

The postconviction court found these facts:

Arresting officers testified Smith rammed six of their vehicles attempting to flee. He struck at least one of the vehicles with such force that parts were seen to fly from that vehicle. Officers were standing near their vehicles as Smith continuously shifted from forward to reverse and back again, ramming their vehicles in an attempt to escape. An officer expressed his fear for the safety of those around Smith. Smith revved his engine at officers in a manner suggesting he might strike them as well. Multiple officers were in close proximity to Smith's vehicle. Smith continuously failed to obey uniformed officer's commands to put his vehicle in park and exit.

From there, the court found a factual basis for the plea "as Smith used his truck as a dangerous weapon to flee uniformed officers who commanded him to stop and exit the truck. While trying to flee, Smith's truck was a dangerous weapon that he used in a manner sufficient to meet the statutory definition."

We agree with that ruling. The proof needed to show a factual basis for a guilty plea is different from that required to support a verdict. *See State v. Keene*, 630 N.W.2d 579, 581 (Iowa 2001). "[T]he trial court is not required to extract a confession from the defendant. Instead, it must only be satisfied that the facts support the crime, 'not necessarily that the defendant is guilty.'" *Id.* (citations omitted). Smith sufficiently demonstrated his intent to inflict death or serious injury when he revved his engine in a threatening manner and reversed and struck the police vehicles repeatedly. And despite his current assertion that he was trying to avoid hitting anyone, in his plea, Smith conceded that his "irresponsible" driving could have caused serious injury. We are satisfied that those facts support the

crime and form a factual basis for Smith's plea of guilty. Accordingly, attorney Arumugam was not ineffective. Having found no performance failure, we need not discuss prejudice.

**AFFIRMED.**